Herman A. ERHART and Ada K. Erhart,
Plaintiffs,

v.

William M. GRAY, District Director of
Internal Revenue for the District
of Kentucky, Defendant.

Civ. A. No. 3829.

United States District Court
W. D. Kentucky,
at Louisville.

Feb. 8, 1961.

Michael J. Clare, Louisville, Ky., for plaintiffs.

William B. Jones, U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

This action was filed August 6, 1959, by the plaintiffs, husband and wife, to recover $14,937.55 with interest from September 1, 1958, as the alleged amount of an erroneous assessment made against the plaintiffs arising out of their joint income tax return for the calendar year 1956. The case was tried to the Court on June 2, 1960, was subsequently brief, and was orally argued August 5, 1960.

### Findings of Fact

From the exhibits, stipulation, and testimony heard by the Court, the following findings of fact are made.

(1) This Court has jurisdiction of the parties and of the subject matter. Title 28 United States Code, §§ 1346(a) (1) and 1402(a).

(2) The plaintiffs are husband and wife and reported their income jointly for the calendar year period on the cash receipt and disbursement basis.

(3) For the calendar year 1956 the plaintiffs filed with the District Director of Internal Revenue at Louisville, Kentucky, their joint income tax return showing an income tax liability of $6,364.65, which was promptly paid. Subsequently, the Commissioner of Internal Revenue made an assessment of additional tax for the calendar year 1956 in the sum of $14,572.32 plus interest in the amount of $1,142.44 for a total of $15,061.73, which amount was paid September 1, 1958. January 1, 1959, a claim was filed for refund of $13,848.16 of the tax and $1,089.39 interest, an aggregate of $14,937.55. July 28, 1959, the claim for refund was disallowed and this suit followed.

(4) Approximately in 1951 Herman Erhart and Clifford A. Knopf organized a corporation under the name of Town & Country Homes, Incorporated of Frederick Acres (hereinafter referred to as Frederick Acres). The business of this corporation was to erect pre-fabricated homes and other residences and to buy and sell real estate primarily for building subdivisions. A year or two later they organized another corporation known as Town & Country Homes, Incorporated of Highgate Springs (hereinafter referred to as Highgate Springs). All of the capital stock of the two corporations was owned equally by Erhart and Knopf.

(5) Erhart and Knopf formed a partnership known as Town & Country Realty on July 27, 1951, in which they were equal partners. The business of this partnership consisted largely of selling houses constructed by the Frederick Acres and Highgate Springs corporations.

(6) Erhart and Knopf likewise were equally the owners of the stock in a corporation organized by them known as the Greater Louisville Insurance Agency.

(7) In the early part of 1956 negotiations were conducted looking to the retirement of Erhart from ownership and activity in the businesses above described, the acquisition of Erhart's stock by the corporations, and the liquidation and dissolution of the partnership.

An agreement was finally reached by which an accountant would be employed to establish the book value of the corporations, Frederick Acres, Highgate Springs, and the Greater Louisville Insurance Agency. By the agreement, Knopf agreed to assume all the liabilities of the partnership in return for all of its assets.

Financial statements were prepared by Henry T. Rowland, a Certified Public Accountant who had been in the employ of Erhart and Knopf in their building activities since 1949. As of February 29, 1956, he ascertained that the book value of Frederick Acres was $37,189.18 and Highgate Springs was $103,709.88.

Based on the accountant's statements, the book value of Erhart's stock in Frederick Acres was $18,594.59 and in Highgate Springs was $51,854.94. However, the value of his interest in Highgate Springs was based upon a statement which included in the assets of that corporation a bill receivable in the amount of $11,348.84, representing an account due it from the partnership, Town & Country Realty, and the accountant's statement of the partnership's affairs showed that each partner was overdrawn in the sum of $4,592.40.

(8) In consummating the sale of Erhart's interest in Frederick Acres to the corporation, five notes were execut-

ed in the following amounts and due on the dates respectively shown:

| Due Date | Amount |
|----------|--------|
| 6–21–56 | $5,494.59 |
| 6–21–57 | 3,250.00 |
| 6–21–58 | 2,350.00 |
| 6–21–59 | 2,500.00 |
| 6–21–61 | 5,000.00 |
| | $18,574.59 |

In consummating the sale of Erhart's interest in Highgate Springs to that corporation, five notes were also executed by that corporation to Erhart as follows:

| Due Date | Amount |
|----------|--------|
| 6–21–56 | $14,005.41 |
| 6–21–57 | 8,339.28 |
| 6–21–58 | 9,239.28 |
| 6–21–59 | 9,089.28 |
| 6–21–61 | 6,589.29 |
| | $47,262.54 |

The total amount of the five notes executed for Erhart's Highgate Springs stock, $47,262.54, was arrived at by deducting the amount of Erhart's overdraft in the partnership, $4,592.40, from the book value of his Highgate Springs stock, $51,854.94.

The Commissioner combined the value of Erhart's stock in both corporations, including the $4,592.40 overdraft, and determined that the sale of his stock in neither corporation could be counted as a sale on the installment basis because the aggregate amount obtained by Erhart on the notes and the overdraft in the year 1956 exceeded 30 per cent of the combined sale price of his stock in the two corporations.

(9) The capital stock of the Greater Louisville Insurance Agency was owned equally by Erhart and Knopf, each of whom acquired his 50 per cent interest by an initial investment of $500.00.

In his 1956 income tax return, Erhart reported the receipt of $147.38 as a long-term capital gain from the sale of his stock to the corporation. This gain was shown to have resulted from cash in the sum of $647.38 received by him in 1956 less $500.00, the amount of his investment. However, this computation overlooked the actual book value of Erhart's stock in the corporation, which the accountant determined to be $3,147.-38. It appears from the terms of the agreement between Erhart and Knopf that the remaining $2,500.00 of the value of Erhart's stock in Greater Louisville Insurance Agency was to be paid him by the corporation over a period of five years in the form of annual insurance premiums aggregating $500.00 in each year.

After it was determined that Erhart was properly chargeable with $2,647.38 as a long-term capital gain in the taxable year 1956, Erhart sought to change his return as to this transaction so as to report it on an installment basis over a period of five years. The Commissioner determined that Erhart, having elected to report the $647.38 as the amount received for his stock in the Greater Louisville Insurance Agency on Schedule "D" of his tax return for 1956, was not entitled to thereafter change to the installment basis.

### Conclusions of Law

The sale of Erhart's stock in Frederick Acres and Highgate Springs to the respective corporations were sought to be consummated under Section 453 of the Internal Revenue Code of 1954, 26 U.S.C. § 453, which is as follows:

"Sec. 453. *Installment Method.*

"(a) Dealers in Personal Property.—Under regulations prescribed by the Secretary or his delegate, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.

"(b) Sales of Realty and Casual Sales of Personalty.—

"(1) General rule. Income from —

(A) a sale or other disposition of real property, or

(B) a casual sale or other casual disposition of personal property * * * for a price exceeding $1,-000.00, may (under regulations prescribed by the Secretary or his delegate) be returned on the basis and in the manner prescribed in subsection(a).

"(2) Limitation—Paragraph (1) shall apply.

"(A) In the case of a sale or other disposition during a taxable year beginning after December 31, 1953, (whether or not such taxable year ends after the date of enactment of this title), only if in the taxable year of the sale or other disposition—

"(i) there are no payments, or

"(ii) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 per cent of the selling price."

The first question to be determined with respect to the sale of Erhart's stock to the corporations is whether the corporate entities are to be disregarded. It is the Government's contention that the corporate structures are mere "fragmentary agencies" and should be disregarded.

In the case of Moline Properties v. Commissioner, 319 U.S. 436, 438, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499, the Supreme Court said:

"The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity.

(Citing cases.) In Burnet v. Commonwealth Improvement Co., 287 U. S. 415 [53 S.Ct. 198, 77 L.Ed. 399], this Court appraised the relation between a corporation and its sole stockholder and held taxable to the corporation a profit on a sale to its stockholder. This was because the taxpayer had adopted the corporate form for purposes of his own. The choice of the advantages of incorporation to do business, it was held, required the acceptance of the tax disadvantages."

There is no intimation in the record in this case that the corporate forms constituted a sham or provided a form which was "a bald and mischievous fiction." Hence, this Court concludes that the transactions should stand as made and that each sale should be considered separately. The sale of Erhart's stock in Frederick Acres to the corporation comes within the provisions of Section 453 of the Internal Revenue Code of 1954. However, in the sale of his Highgate Springs stock to that corporation Erhart received in 1956 an amount in excess of 30 per cent of $51,854.94, the actual value of his stock, and it cannot qualify as a sale on an installment basis.

Erhart's sale of his stock in the Greater Louisville Insurance Agency was originally reported as a long-term capital gain, then he later undertook to report it on the installment basis.

In Merton's Law of Federal Income Taxation, Vol. 2, Section 15.06, the rule is stated to be:

"Where a taxpayer has reported income from sales on the accrual or cash method, or has treated the sales as deferred payment sales not on the installment plan, he may not subsequently ask to have his tax computed on the installment method."

The election once made is binding notwithstanding that the provisions of subsequent Revenue Acts may change the taxable effect of the election. Hence, the tax on this transaction was properly

analyzed by the revenue agent and Erhart is not entitled to any relief on the assessment on the sale of his stock in the Greater Louisville Insurance Agency.

### Conclusion

The Court concludes that the plaintiffs, Herman A. Erhart and Ada K. Erhart, are entitled to recover that amount of the Commissioner's assessment representing the excess of the assessment on the Frederick Acres stock sale over the tax assessable on the installment basis. To that extent the plaintiffs are awarded a judgment and in all other respects the amount of the assessment will stand as made. The plaintiffs' petition to recover any amount of the assessment made on the sale of the Highgate Springs stock and Greater Louisville Insurance Agency stock is dismissed.

The parties will confer as to the proper amount to be adjudged and plaintiffs' counsel will tender judgment for that amount. Plaintiffs will be awarded interest as provided by law.