T. DAVID BURGESS and SUSAN M. BURGESS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Burgess v. Commissioner
Docket Nos. 6223-79, 9635-79.
United States Tax Court
T.C. Memo 1981-131; 1981 Tax Ct. Memo LEXIS 613; 41 T.C.M. (CCH) 1127; T.C.M. (RIA) 81131; March 23, 1981. T. David Burgess and Susan M. Burgess, pro se. Mary Helen Weber, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency in petitioner's income tax of $ 10,453.26 for 1975 and $ 3,241.55 for 1976. After concessions by the parties, the two issues remaining are (1) whether petitioners may deduct certain expenses of their wholly owned corporation and (2) whether petitioner Susan Burgess (Ms. Burgess) had self-employment earnings during 1975. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners resided in Williamsburg, Ohio, when they filed their petitions herein. They filed their joint Federal income tax returns for 1975 nd 1976 with the Cincinnati Service Center in Convington, Kentucky. *614 From 1969 through 1973, petitioner T. David Burgess (Mr. Burgess) was a partner in Baumgardner Real Estae, a real estate brokerage partnership. In 1973, he acquired the entire partnership and proceeded to run it under the same name as a sole proprietorship. During the years in issue, Baumgardner Real Estate acted as the real estate agent for Ohio Rural Land Company, Inc. (ORL), an Ohio corporation incorporated and wholly owned by Mr. Burgess. ORL was created by Mr. Burgess in order more profitably to develop and sell prefabricated houses meeting specifications set by the Farmers Home Administration of the United States Department of Agriculture (the FHA). The FHA provided financing for buyers of qualifying houses but limited the prices for which these houses could sell. However, FHA regulations allowed the buyer to be charged a sales commission for the services of a third-party real estate broker. Accordingly, Mr. Burgess caused ORL to purchase prefabricated houses from Community Human and Industrial Development, Inc. When these houses were sold, ORL would pay a sales commission of 7 percent to Baumgardner Real Estate for its brokerage services. Thus, Mr. Burgess would *615 receive 7 percent of the sales price in addition to the limited profit allowed under the FHA regulations. Aside from such buying and reselling, ORL engaged in no other activity. No stock of ORL was ever issued, nor were director meetings ever called. [1] Mr. Burgess was required to co-sign all notes of ORL. Had it not been for the FHA sales price ceiling, ORL would never have been formed. ORL did, however, engage in substantial business activity, including purchasing and selling prefabricated houses, borrowing and repaying funds, and paying interest. In addition, ORL incurred various expenses incidental to its business activity. ORL filed Federal corporate income tax returns (Forms 1120) for each of the years 1972 through 1976 showing substantial amounts of income and expenses. Ms. Burgess was not employed during 1975. She would occasionally help her husband by doing minor office work or running errands, but at no time did she provide regular or substantial services for her husband's business. She was not *616 paid for her occasional help. OPINION The first issue presented is whether petitioners may deduct any business expenses paid and incurred by ORL. Petitioners do not dispute that section 162[2] only allows a taxpayer to deduct business expenses incurred in his own trade or business, see Deputy v. DuPont, 308 U.S. 488, 493-494 (1940), but rather argue that we should ignore ORL's separate existence. Petitioners maintain that ORL was formed solely to generate the sales commissions otherwise unobtainable because of FHA regulations, that corporate formalities were ignored, that ORL functioned only as Baumgardner Real Estate's alter ego, and that, as a result, ORL was a "straw" corporation lacking substance. To treat ORL as a separate taxable entity, they insist, is to exalt form over substance. This issue has been thoroughly canvassed in Strong v. Commissioner, 66 T.C. 12 (1976), affd. without opinion 553 F.2d 94 (2d Cir. 1977). *617 See also Ogiony v. Commissioner, 617 F.2d 14, 16 (2d Cir. 1980), affg. a Memorandum Opinion of this Court. As we observed in Strong (p. 21), "[t]he principal guidepost on the road to recognition of the corporate entity is Moline Properties v. Commissioner, 319 U.S. 436 (1943)." On that occasion, the Supreme Court held-- The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. [319 U.S. at 438-439. Fn. refs. omitted.] That ORL was formed solely to obtain sales commissions otherwise unobtainable because of FHA regulations does not help petitioners; "[i]ndeed, *618 the very exigency which led to the use of the corporation serves to emphasize its separate existence." Strong v. Commissioner, supra at 26 and n. 12. Moreover, "[h]aving set up a separate entity through which to conduct their affairs, petitioners must live with the tax consequences of that choice." Strong v. Commissioner, supra at 26 and at 22 n. 8. ORL was formed for a business reason, and it engaged in frequent and substantial business activity. Its existence cannot, therefore, be ignored. In short, to the extent that the expenses in question meet the test for section 162, they are deductible by, and only by, ORL. [3]
The second issue presented is whether Ms. Burgess had self-employment income during 1975. Respondent, at trial, sought to sustain his position that she did on the ground that the sole proprietorship was in fact a partnership between petitioners to which Ms. Burgess contributed services. Petitioners maintain that no *619 partnership existed and that Ms. Burgess had no self-employment income. Petitioners have the burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure. Ms. Burgess testified that any services which she rendered were minimal and without expectation or receipt of compensation therefor. At the trial, based upon her testimony and the pertinent portions of the record on this issue, we held that petitioners had carried their burden of proof that no partnership existed and that Ms. Burgess did not otherwise have self-employment income. We continue to hold to this view. Accordingly, as to this issue, petitioners' position is sustained. [4]
*620 Decisions will be entered under Rule 155. Footnotes
1. There is no evidence whether directors were ever elected or officers appointed. We accept Mr. Burgess's testimony that no minutes of corporate activity exist.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
3. Because of our holding on this issue, we do not determine which, if any, of ORL's expenses were "ordinary and necessary" within the meaning of section 162↩. ORL's tax liability is not before us.
4. We reserved to respondent the right to argue this issue on brief and, indeed, to augment the record with facts supporting his theory (to which, if he did so, we stated that we would give the petitioners an opportunity to respond). Respondent made no attempt to seek such augmentation, and his arguments on brief have not convinced us that our previous conclusion was incorrect. In passing, we note that at no point did respondent indicate how he arrived at the amount of Ms. Burgess' self-employment income as determined in the deficiency notice. We also note that respondent has not claimed that the alleged self-employment income of Ms. Burgess should be attributed to Mr. Burgess, presumably because the latter has already reported and paid tax on the maximum amount of income subject to the self-employment tax for 1975.↩